IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA          :

        v.          :          CRIMINAL NO. 26-CR-324-1

NYEEM ANDERSON          :

## GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

The United States, by and through its attorneys, David Metcalf, United States Attorney, and Megan Curran, Special Assistant United States Attorney, hereby submits this Motion for Pretrial Detention to assist the Court at any Pretrial Detention Hearing.

Defendant Nyeem Anderson should be detained pending trial, as he poses a significant risk of flight.

On July 22, 2026, a grand jury sitting in this district returned an indictment charging defendant Nyeem Anderson with one count of conspiracy, in violation of 18 U.S.C. § 371 and two counts of mail theft, in violation of 18 U.S.C. § 1708. The evidence gathered on Saturday August 8, 2026, during the arrest of Anderson, further supports those charges.

As detailed below, Anderson is a risk of flight, who lacks ties to the community to ensure his return to court for these charges. The evidence underlying the charges shows fraud is Anderson's way of life, to the tune of $68 million worth of $68 million stolen U.S. Treasury checks. His recent August 8, 2026 arrest demonstrates that Anderson is continuing with his fraudulent ways, as he was in possession of over $16,000 worth of more stolen U.S. Treasury checks when he was arrested. Anderson should not be released to the King of Prussia address

identified by Pre-trial Services (which appears to be connected to Anderson's name and, consistent with his fraud practices, someone else's social security number), or any other address. No condition or combination of conditions will ensure his appearance in Court. As Anderson knows and stated to individuals nearby when he was arrested, "They finally got me. Tell everyone I am going away for a long time."

I.    **FACTS**

In support of this motion, the government makes the following representations and proposed findings of facts:

A.    **Probable Cause and the Evidence in this Case**

There is probable cause to believe that the defendant has violated Title 18, United States Code, Sections 371 and 1708. The evidence in this case is strong.

The indictment in this case charges that defendant Nyeem Anderson was engaged in a conspiracy to steal government funds through stolen U.S. Treasury checks. As charged in the indictment, the conspiracy spanned between December 13, 2024 to May 27, 2026. Anderson received the stolen Treasury checks from an unknown source and operated a Telegram channel to advertise the sale of the stolen Treasury checks. Anderson advertised the face value of over $42 million stolen Treasury checks for sale on his Telegram channel.

Anderson utilized his co-conspirators to assist in the shipping of the stolen Treasury checks to known and unknown purchasers. The purpose of the sale of the stolen Treasury checks was for their ultimate fraudulent deposit by the end purchasers.

Anderson and his co-conspirators were identified on video surveillance at the various stores in which they shipped the stolen Treasury checks from. They were also identified as their

2

own government identifications were utilized in connection with the shipping, with their identities often appearing on the shipping labels generated at the stores they utilized to mail the stolen checks sold in their operation.

In addition to the criminal conduct charged in Count One for the conspiracy, Anderson was found to be in possession of over $15 million in stolen Treasury checks, during a motor vehicle stop. In total, Anderson has been charged with possessing over $68 million in stolen U.S. Treasury checks.

The evidence in this case is strong. It is supported by the stolen Treasury checks themselves which are confirmed through government databases as being valid U.S. Treasury checks; Telegram communications; shipping data as maintained by each shipping location; as well as further supported by video surveillance and electronic evidence establishing the charges in the indictment. The weight of the evidence here demonstrates that there is a strong likelihood of conviction.

### B.    Arrest

Anderson was indicted on July 22, 2026 and an arrest warrant was issued. Despite attempts by law enforcement, Anderson was not located and arrested until Saturday August 8, 2026 in the District of New Jersey. When federal agents apprehended him, he was uncooperative. Search incident to lawful arrest of Anderson's person, Anderson was found in possession of three separate stolen U.S. Treasury checks (that were in the names of other individuals) with a face value of $16,140.71. The stolen checks were in his pants pockets. Anderson also had $900 of U.S. currency on his person, in the same pants pocket as the

3

Treasury checks.

During his arrest, Anderson yelled out to others present in sum and substance, "They finally got me. Tell everyone I am going away for a long time. I am standing ten toes down."

### C.       Maximum Penalties

The offenses for which defendant Nyeem Anderson is charged have a statutory maximum of fifteen years imprisonment.

## II.    DETENTION STATUTE

Pursuant to Title 18, United States Code, Section 3142(f)(2), the defendant may be held if there is a serious risk that such person will flee and there is no condition or conditions which will reasonable assure that person's appearance.  Factors to be considered include the nature and circumstances of the offense charged, the weight of the evidence, and the history and characteristics of the person.  18 U.S.C. § 3142(g).

## III.    RISK OF FLIGHT

The defendant has no ties to the community, no residence, employment, vehicles, or anything of value which ties him to the Eastern District of Pennsylvania. This increases his risk of flight and risk of appearance at Court.

### A.  Circumstances of Arrest

These circumstances and evidence support detention. Anderson was apprehended by federal agents 2.5 weeks after indictment. However, this was not for lack of law enforcement diligence. Rather, this demonstrates Anderson's transience and lack of ties to the community. Indeed, federal agents were aware of multiple addresses connected to Anderson, discussed

4

further on pages 5-7. Further, as discussed on page 6-8, Anderson is not employed, further frustrating the effort to locate him, but more importantly for purposes of detention, demonstrating lack of ties to the community and risk of flight.

Anderson's conduct when arrested supports detention as well. Anderson was arrested in possession of $16,140.71 worth of U.S. Treasury checks that were not in his name, and $900 cash. Anderson is *not employed*, and yet as discussed in detail on page 7, he had over $17,000 worth of checks and cash on him on August 8, 2026 that were all recently issued checks. This shows that as of days ago, he was continuing with the fraudulent scheme for which he is indicted. And significantly, it demonstrates that he has means to obtain funds (or already has funds) which can facilitate his flight, and the demonstrated pattern of committing fraud to support himself.

### B. No Known Residence and Access to Fake Identities

Nyeem Anderson has no known, verified residence. Law enforcement has identified seven residences in the past four years that Anderson has ties to. Six of these seven residences were rented using a fraudulent identity. Eviction proceedings for non-payment have been initiated for those six residences. The seventh residence is his grandmother's, which is listed on his PA identification card.

Anderson was most recently identified by law enforcement as living at the Alcott, a luxury apartment building, located at 416 Spring Garden Street, in Philadelphia. Anderson rented the apartment under a fake identity. As of June 30, 2026, property management started eviction

proceedings under the fake identity name, however, confirmed that Anderson was the primary tenant of the unit.

Prior to residing under the stolen identity at the Alcott, in the past four years, Anderson has been identified through law enforcement and/or property management as having ties to five additional residences that were all rented through one fraudulent identity. This supports that Anderson is transient, a flight risk, and has no ties to the community. All five of the residences were rented with the same fake identity, using fraudulent identity documents. Multiple of these apartments (and the most recent apartment, the Alcott) are luxury apartments. Anderson is unemployed and his income appears to be the fraudulent scheme for which he has been charged. Additionally, eviction proceedings for lack of payment were initiated for all five residences. These include:

1. 322 N. Broad Street, Apartment 622, Philadelphia, PA (a luxury apartment complex)

2. 209 N. 58th Street, Philadelphia, PA

3. 2122 N. Marshal Street, 2, Philadelphia, PA

4. 1336 S. Harmony Street, 4, Philadelphia, PA

5. 100 W. Girard Avenue, Unit 106, Philadelphia, PA (a luxury apartment complex)

Pennsylvania Department of Transportation ("Penn DOT") records indicate that Anderson's PA Driver's License expired on February 23, 2023. Anderson possesses a PA State Identification, which was issued on November 14, 2025. This identification indicated his residence was 2440 Edgley Street, Unit C, Philadelphia, PA, 19121. This address is within Public Housing Authority community, and it is unclear whether Anderson has authority to reside

6

there. Further, law enforcement has conducted surveillance at that location and never identified Anderson.

The government strongly disagrees with Pre-trial Services' recommendation to release Anderson. Pre-trial Services recommends releasing Anderson, despite not verifying this residence and noting that the only tie to this residence is viewing it in LexisNexis. There is no other connection to the King of Prussia address identified by Pre-trial Services other than LexisNexis. In fact, it appears that Pre-trial Services identified this address for Anderson (rather than Anderson noting that this is the residence to which he could be released). A law enforcement database check of this King of Prussia shows that this address is connected to Anderson's name, but not his social security number. Instead, it is connected with a social security number of an individual who resides in Florida. This indicates that Anderson is renting or using this address through fraudulent means.

Anderson incredulously reported to Pre-trial Services that he maintains contact with his parents and siblings and yet could not provide any contact information for any of them, leaving Pre-trial Services with the inability to confirm any of the information he provided. Anderson should not be released.

With his lack of connection to any known residence and the demonstrated history of residing at locations under stolen identities, raises serious concerns of how any set of pretrial conditions, could ensure his appearance in this case.

### C.  No Employment and Unknown Assets

Pennsylvania Department of Labor and Industry records indicate that Anderson has no known employment and has no record of ever having any employment. Pre-trial Services acknowledges that.

As charged in the indictment, Anderson possessed the face value of $68 million in stolen Treasury checks. As learned through the investigation, Anderson charged purchasers approximately 10% of the value of the check. These payments were directed to multiple Cash App, Zelle and other online money transfer applications. Anderson's numerous Cash App accounts were suspended, and Anderson utilizes numerous sources to accept fraud proceeds on his behalf.

While the conduct in the indictment is charged through May 2026, it is evident from Anderson's arrest he is still engaged in the sale of stolen U.S. Treasury checks. On his person on August 8, 2026, he had three separate checks intended for various beneficiaries around the country with addresses in New York, Illinois and Texas. Two of these checks were issued just a few weeks ago, on July 27, 2026 and July 24, 2026. The third check was issued on June 12, 2026. This indicates that Anderson is actively working with an unknown individual to steal the Treasury checks from the mail stream before Anderson possessed them, as these checks would have entered the mail stream on or before the date in which they were issued.

Pre-trial Services notes that Anderson has been employed since at lest 2021, has no income or savings, and provided no indication of how he maintains his cost of living. Pre-trial Services also notes that he appears to have substantial finances and no verifiable employment. Despite this contradiction (which is also contrary to the evidence), Pre-trial Services recommends

8

release. The evidence in this case and Anderson's conduct at his arrest demonstrates that he has the means to flee and evade detection. GPS monitoring will not prevent an individual who possessed $68 million worth of stolen checks over the course of 1.5 years, and most recently, $16,000 worth of fraudulent checks, from fleeing.

### D. Access to Firearms

In addition to lack of ties to the community, there is evidence that Anderson has access to firearms. Despite having no registered firearms in his name, in March 2021, Anderson was identified in a car stop during which he had a loaded Glock with 13 rounds, on his person, in his waistband. In January 2024, Anderson was a part of car stop in which a loaded Glock was under the passenger floor mat.

### E. Sentencing Exposure

Anderson has never faced a prison sentence before. Here the anticipated guideline range is higher that the statutory maximum for the charges in the Indictment. The high guidelines, and lack of any serving any prison sentence before, provide Anderson with an incentive to flee. Even if Anderson was given a below-guideline sentence, he faces federal incarceration, which is an significant reason to flee. As Anderson knows and stated to individuals nearby when he was arrested, "They finally got me. Tell everyone I am going away for a long time."

## IV. CONCLUSION

The defendant lacks any real ties to the Eastern District of Pennsylvania to ensure his return to Court in this case. Although he is a U.S. citizen and has no prior criminal record, the totality of the circumstances including his lack of ties to the community, lack of employment and unexplained financial assets, his use to fake identities and fraudulent identity documents, his actions during his

arrest, are significant factors for risk of flight.  The strength of the evidence against him coupled with the recommended term of imprisonment provides further support that the defendant is a flight risk.

The government respectfully disagrees with the Pre-trial Services' recommendation. The Pre-trial Services Report does not account for the strength of the evidence, the circumstances of his arrest, or the many apartments that he has been connected to via fraudulent identities. It fails to acknowledge the contradiction between Anderson having significant assets but being unemployed. It fails to acknowledge that Anderson states he is in contact with many members of his family, but did not provide any contact information for any of them such to allow Pre-trial Services to verify the information provided. It recommends release to an address that is only connected to Anderson via LexisNexis, has not been verified by anyone, and law enforcement databases show is connected to a person with a different social security number (not Anderson's).

When all these factors are viewed in light of the substantial sentence defendant faces if convicted, it is clear that no condition or combination of conditions will reasonably assure the presence of the defendant as required.

WHEREFORE, the government respectfully submits that its Motion for Defendant's Pretrial Detention should be granted.

Respectfully submitted,

DAVID METCALF
United States Attorney


*/s Megan Curran*
MEGAN CURRAN
Special Assistant United States Attorney

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a copy of the Government's Detention Memorandum was served by email via ECF.

Joshua Hill
Pietragallo, Gordon, Alfano, Bosick, & Raspanti, LLP
1818 Market Street, Suite 3402
Philadelphia, PA 19103

*/s Megan Curran*
MEGAN CURRAN
Special Assistant United States Attorney

Date:   August 11, 2026